**DINEEN, Superintendent of Insurance, v. UNITED STATES.**

No. 46208.

Court of Claims.
June 2, 1947.

Camden R. McAtee, of Washington, D. C. (F. X. Horan, of New York City, on the brief), for plaintiff.

Robert E. Mitchell, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff, the New York State Superintendent of Insurance, is charged by statute with the liquidation of the New York Indemnity Company, insolvent. That company was the surety on the bond of Grumwald and Tudor, Inc., and Elbert Deffebach, who on May 12, 1928, made a contract with the Government, acting through the Assistant Secretary of the Interior, to construct a piece of highway in the Sequoia National Park. The work was not completed within the contract time, as extended, and liquidated damages in the amount of $9,300 were withheld from the payments to the contractors. The now insolvent surety company had made large advances to the contractors or on their account in connection with the contract, and hence became entitled to any sums due the contractors from the Government. The plaintiff sues, in that right, for the amount withheld as liquidated damages. By an act of Congress approved March 16, 1944, Private Law 226, 75th Congress, 2nd Session, this court was given jurisdiction of the suit regardless of the lapse of time, laches, or any statute of limitations.

As shown in our findings, the work was to be commenced within 10 days from the date of receipt of notice to proceed, and was to be completed within 150 days from that date, the contractors to be subject to liquidated damages at $100 per day for each day of unjustified delay beyond the completion date. The notice to proceed was received on May 21, 1928, which fixed October 18, 1928, as the completion date. The contractors did not begin work until July 21. Then their progress was slow, and by September 25th, 85 percent of the contract time having expired, they had completed only 14 percent of the work. The situation was such that they could not complete their work either by October 18, the contract completion date, or by the time winter weather would require the work to be closed down.

On October 1 the Government advised the plaintiff that its funds for National Park road construction were depleted and that the agreed monthly progress payments could not be made. The contractors were given their choice as to whether to proceed without these progress payments or ask for a shut-down order, which would stop the running of their contract time. They chose to proceed, which they did until October 30, making good progress during October, but still having completed only 37 percent of the work, though their

contract time had already expired on October 18. On October 30 the contractors wrote that they could not finance the work any longer, unless they received at once all payments due them. The Government then authorized them to suspend work, effective November 1, until resumption was authorized in the spring of 1929. The winter weather would have shut the work down on November 13.

The monthly payments for work done in September and October were made March 14, 1929, Congress having by that time appropriated money for that purpose. In the meantime, the contractors and the surety company asked the Government to terminate the contract, but the Government did not agree to do so. On April 3, 1929, the contractors wrote the Government that they were making arrangements to commence the work when weather conditions were suitable. They asked for an extension of 120 working days in which to complete the work.

On May 29, 1929, the Government directed the contractors to resume work June 1, and said that the contract time would be resumed as of that date. Work was resumed, and completed August 20, 1929. The Government had in the spring of 1929, substantially reduced the amount of the work and the compensation, as it had a right to do under the contract. Upon final settlement, the Government withheld $9,400 for the 94 days of delay in completion beyond October 18, 1928, not counting the period from November 1, 1928, to June 1, 1929, during which the work was suspended by the Government's order. The Comptroller General reduced the number of days by one, because about one-half of the contractors' forces had, on two days, been drafted by the Government to fight a forest fire. He withheld $9,300 and the plaintiff sues for that amount.

The plaintiff urges that the Government's failure to make monthly progress payments and its shut-down order constituted breaches of the contract which "terminated" it, and pursuant to Article 9 of the contract, disabled the Government from assessing liquidated damages. That article was interpreted in United States v. American Surety Company, 322 U.S. 96, 64 S.Ct. 866, 88 L.Ed. 1158, as not permitting the Government to terminate the contract for cause and also assess liquidated damages. But in this case the Government did not terminate the contract. It probably would have been entitled to do so, because of the contractors' tardiness in performance. But it only issued a suspension order, and the plaintiff, after the suspension, resumed performance and completed the work. Its intermediate request that the Government terminate the contract was not granted. The contract, therefore, remained in force, including its provision for liquidated damages.

The plaintiff says that the liquidated damages here assessed amounted to a penalty, because of their size, $9,300, in proportion to the total contract price as reduced by the Government's change order, $47,882.52. We do not know whether the Government was damaged by the delay nor, if so, how much. The difficulty of determining these questions is the reason and justification for the insertion of the agreement for liquidated damages. Sun Printing and Publishing Association v. Moore, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366; United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731; Lebanon Woolen Mills, Inc., v. United States, 99 Ct.Cl. 318.

The plaintiff's petition will be dismissed. It is so ordered.

JONES and WHITAKER, Judges, concur.

WHALEY, Chief Justice, and LITTLETON, Judge, took no part in the decision of this case.