Jones, Chief Justice,
delivered the opinion of the court:
Plaintiff seeks to recover certain monies withheld by defendant under a contract dated January 30, 1942, by the terms of which plaintiff undertook to transport the goods, household effects and books of certain officers of the United States Army from Edgewood Arsenal, Maryland, to the vicinity of Fayetteville, North Carolina, in accordance with an agreed schedule which specified seven different moves or shipments and the particular dates each shipment was to be called for and delivered. Plaintiff during the month of February 1942 performed the services called for by the contract, in accordance with the terms thereof, except for certain delays aggregating twelve days in calling for and delivering the goods involved in four of these shipments, to’wit, the transportation of the goods of Lieutenants Harris and Martin and of Captain Lydick and of Lt. Col. Cole, as set forth in finding 9.
The contract under which the goods were transported contained a provision reading in part as follows:
Delays liquidated damages. — If the contractor refuses or fails to call for goods on the date specified and/or fails to deliver within the time specified or any extension thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the contractor shall pay to the Government, as fixed, agreed, and liquidated damages the amount of $25.00, for each calendar day of delay in calling for and/or making delivery, and the contractor and his sureties shall be liable for the amount thereof:
Defendant paid plaintiff the consideration provided for in the contract for performance of said services, but in 1945 deducted $300 from certain monies owing by it to plaintiff on an entirely distinct contract for the transportation of the goods of Brigadier General Searby from Florida to Pennsylvania, contending that the payments made to plaintiff under the earlier contract were erroneous and improper, to the extent that no deductions had been made from such payments to cover liquidated damages for the twelve days of delay involved in plaintiff’s performance of that contract. *316 Tbe propriety of a further deduction of $14.54, on account of charges in excess of plaintiff’s published tariff for one of the shipments under the 1942 contract does not appear to be questioned by plaintiff at this stage of the proceedings. The $300 deducted by defendant as liquidated damages is the true amount in dispute between the parties.
No exception is taken to the finding of fact that plaintiff was in default to the extent of an aggregate of twelve days’ delay in performing the services required of it under the contract. The question of a breach of the contract by plaintiff is not, therefore, in issue. Likewise defendant concedes, as plaintiff contends and as we have found, that the goods transported under the contract were not the property of defendant, but of the individual officers mentioned. Defendant could not well maintain the contrary in view of prior decisions of this court and of the Supreme Court of the United States. See Oregon-Washington R. R. & Nav. Co. v. The United States, 255 U. S. 339, 345 (1920); United States v. Galveston, H. & S. A. R. Co., 279 U. S. 401, 404.
The single issue for our determination, presented by way of defendant’s counterclaim to plaintiff’s petition to recover the $300 deducted from the money due plaintiff under the Searby contract, is whether defendant, in view of the fact that the goods transported were not its own property, can be legally entitled to damages of any kind for plaintiff’s failure to transport such goods within the dates specified in the contract.
Plaintiff’s contention is that defendant, having no property right in the goods transported upon which it might sue the carrier for damage to or loss of such goods, can “under no circumstances * * * suffer damage which is legally com-pensable”; that this being so, enforcement of the liquidated damage provision “has no greater effect than the imposition of a penalty for failure to perform under the contract.”
The element of fallacy in this contention is at once apparent. Property rights, as such, are by no means the only matters the full enjoyment of which may be protected by contract, and for which a contracting party may be required to respond in damages in the event the agreement is breached. Where something other than a strict property right is the object of *317 concern the difficulty of ascertaining tbe damage in event of breach would appear to make a stipulation as to damages only the more desirable.
As noted in Sun Printing c& Publishing Assn. v. Moore, 183 U. S. 642, 670, a leading case upon the subject of liquidated damages [quoting from PLubbard v. Grattan arid wife, Alcock & Nap. R. 389], “Such stipulations as to damages are upheld by courts of law upon two grounds; 1st. Because a man may set a value, not only upon matters connected with his property, which value is capable of being ascertained, but upon matters of taste and fancy, such as prospect or ornament, which he alone can appreciate; and, 2dly, because even in matters capable of ascertainment, great difficulties might occur in some cases; and, in all cases, it is prudent in both parties to provide against the trouble and expense of a future investigation ; and the cases which seem to have interfered with such compacts, are those in which the subject matter of the stipulation shows that, whatever the form of it may be, the parties could not have contemplated any more than a penalty to secure against actual damage.”
In the instant case the reasonable object of concern on the part of the Quartermaster Corps was something more substantial than a matter of taste and fancy. The interest of the army in having the personal effects and household goods of its officers expeditiously transported to the desired destination is obvious. Unexplained delays might adversely affect the morale and efficiency of the personnel whose property was in transit. Delay in picking up one officer’s property might necessitate postponing the delivery of that of another. Temporary quarters might have to be furnished to the officer whose effects were not delivered on time. Other disadvantages might reasonably be attendant upon a failure to adhere to schedule in transporting the personal effects and household goods of military personnel. We deem it appropriate to repeat what we had occasion to say in Oregon-Washington R. R. & Nav. Co. v. The United States, 58 C. Cls. 645, 648, notwithstanding we were there concerned not with the question of damages upon breach of the carrier’s undertaking, but with the legal basis for the Government’s assuming the obligation to provide transportation for property not its own:
*318 Primarily it may be said that the liability of the Government for the transportation of property is limited to the transportation of its own property, but it does not follow that it may not obligate itself for the transportation of other property. And in the service of an Army officer is found abundant reason for doing so.[1]
An Army officer has no fixed station such as is usually the case with civilians. He is subject to orders and must move when directed. Family ties appeal to him as to other men, the maintenance of a home means household goods, and when the needs of the service demand his transrer to another station it is but natural to say that, if he be not assigned to furnished quarters, his goods must go with him and all the circumstances but tend to furnish reasons why the Government should in these cases assume an obligation as to the transportation of property not its own.
In the case to which we have just referred the Government contended that if the privately owned household goods of an Army officer were not to be deemed public property for the purpose of determining the rate at which they should be transported by land-grant carriers then it must follow that the Government should not be obligated to pay for the transportation of such goods under any circumstances. Here plaintiff, even while seeking to be compensated for transporting property not owned by the Government, namely, that under the Searby contract, is saying with respect to defendant’s counterclaim that because the goods transported under the prior contract (that of Harris, Martin, Lydick, and Cole) are not the property of the Government, plaintiff cannot be required under any circumstances to respond in damages to the Government for a breach of this prior contract. If it is true that the Government may obligate itself to furnish transportation for property not its own, and be required to *319 pay for such transportation at the rates provided for the carrying of private property, it is not perceived why it may not fairly contract to protect such nonproperty interest as it may have in the goods transported. Nor can we see why this intention to protect its interest therein may not fairly be the subject of a stipulation between parties to the contract. Plaintiff has furnished us with no authorities holding the contrary.
In 34 American Law Reports 1336 at 1345, a number of cases may be found where the argument was unsuccessfully advanced that a provision for liquidated damages should not be enforced where the contract breached was a public contract, since the only damages which could have resulted would have been sustained not by the public authority which was a party to the contract, but by the public itself, that is, the citizenry of the particular community. In Brooks v. Wichita, 114 Fed. 297, where a sum of money was deposited with a city on behalf of an electrical concern under contract with the city to install electric lights within a certain time, or to forfeit the deposit as liquidated damages, it was found that the stipulation for liquidated damages was particularly appropriate in such a situation where the difficulty of measuring actual damage obviously motivated the parties in inserting such a clause. It was held that, although neither the city in its corporate capacity, nor the public, suffered any loss or damage capable of judicial ascertainment, plaintiff could not escape the obligation to pay the liquidated damages, any more than it could be relieved from the obligation to pay a promissory note executed upon a sufficient consideration.
It may be argued, of course, that the foregoing line of cases is to be distinguished from the instant case on the ground that in those cases the contracting parties sought to arrive at a fair preestimate of the damages the members of the community would suffer in the event of breach, whereas in the present case the Government sought only to secure itself against damage resulting from tardy performance of the transportation service to be rendered by the carrier. In this connection plaintiff calls to our attention 18 Comp. Gen. 164 wherein the opinion is expressed that when the personal *320 effects of military officers are voluntarily turned over to the Government for shipment in order to obtain the benefit of the Government’s paying the transportation costs, the Government is at most merely a bailee of the property for the benefit of the bailor, and, aside from statute, contractually liable only for the breach of an implied obligation to exercise ordinary care. We cannot apply the limited concept plaintiff would have us adopt concerning the possible damage the Government sought to preestimate and secure by stipulation in the present contract. It finds no support in the historical background of the practice on the part of the army to furnish free transportation within prescribed limits for the private property of its officers. (See Oregon-Washington R. R. & Nav. Co. v. The United States, 58 C. Cls. 645, 648-50; also 18 Comp. Gen. 164, 168.)
We cannot agree with plaintiff’s general proposition that because defendant had no ownership or property interest in the household goods and personal effects transported that it necessarily had no interest in the safe transport of those goods from which it might sustain damage in the event the goods were not promptly called for and delivered.
The suggestion is advanced by plaintiff that no claim has been made by anyone in the present case that actual damage was sustained either by the defendant or by the owners of the goods transported by plaintiff. Several answers readily come to mind. In the first place we cannot assume that the mere failure to assert the existence of actual damage to defendant necessarily implies that no actual damage in fact resulted. Certainly under the rule prevailing in the Federal courts today actual damage is not a necessary allegation nor required proof where the contract contains a valid provision for liquidated damages — “Recovery of liquidated damages is allowed upon mere proof of an explicit contractual undertaking to that effect. No proof that, in fact, damages did not flow from the breach is allowed.” Byron Jackson Co. v. The United States, 85 F. Supp. 665 (S. D. Calif.). In the second place the test is not what appears at the termination of the contract but what the parties must have fairly intended when the contract was made. The amount stipulated in the contract as liquidated damages for a breach thereof, and *321 which is regarded by the courts as liquidated damages rather than as a penalty, may be recovered in the event of a breach, even though no actual damages are suffered as a consequence of such breach. Sun Printing & Publishing Assn. v. Moore, supra; United States v. Bethlehem, Steel Co., 205 U. S. 105, 121; Byron Jackson Co. v. The United States, supra; 34 American Law Reports, 1336 at 1341, and numerous cases therein cited.
Language occasionally found in such cases as Dorrance v. Lehigh Valley Coal Co., 13 F. Supp. 73, and Chicago House Wrecking Co. v. The United States, 106 Fed. 385, to which plaintiff makes reference in its brief, seeming to imply that if the amount stipulated as liquidated damages is disproportionate to the loss actually suffered it i,s not only the right but the duty of the court to consider the amount named merely as a penalty, was specifically disapproved in Sun Printing & Publishing Assn. v. Moore, 183 U. S. 642, 660:
Now it is to be conceded that the proposition thus contended for finds some support in expressions contained in some of the opinions in the cases cited to sustain it. Indeed, the contention but embodies the conception of the doctrine of penalties and liquidated damages expressed in the reasoning of the opinions in Chicago House Wrecking Co. v. United States (1901), 106 Fed. Rep. 385, 389, and Gay Manufacturing Co. v. Camp (1895), 25 U. S. App. 134, 65 Fed. Rep. 794, 68 Fed. Rep. 67, viz, that “where actual damages can be assessed from testimony,” the court must disregard any stipulation fixing the amount and require proof of the damage sustained. We think the asserted doctrine is wrong in principle, was unknown to the common law, does not prevail in the courts of England at the present time, and it is not sanctioned by the decisions of this court.
Following an extended analysis of both English and American decisions the court states (p. 672):
It may, we think, fairly be stated that when a claimed disproportion has been asserted in actions at law, it has usually been an excessive disproportion between the stipulated sum and the possible damages resulting from a trivial breach apparent on the fao.e of the contract, and the question of disproportion has been simply an element entering into the consideration of the question of what was the intent of the parties, whether bona fide to fix *322 the damages or to stipulate the payment of an arbitrary sum as a penalty, by way of security.
In United States v. Bethlehem Steel Co., supra, the plaintiff had contracted to construct a number of gun carriages for the Government to be delivered at specified periods for use in the Spanish-American War, under penalty of $35 a day for each day’s delay after the time specified. As a result of six hundred days of delay $21,000 was assessed as liquidated damages and deducted from the payments due plaintiff. The Court of Claims gave judgment that plaintiff recover the amount so withheld, the court having found that it did not appear the Government was ready to use the gun carriages at the time when they were finally delivered by the plaintiff, nor that it could have used them on its fortifications if they had been delivered at an earlier day, nor that the defendant suffered any injury or damage whatever by the delay in delivery of the gun carriages. In reversing this judgment and remanding the cause for dismissal of the petition Mr. Justice PecMiam stated (pp. 119 and 120) :
The courts at one time seemed to be quite strong in their views and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. This whole subject is reviewed in Sun Printing & Publishing Association v. Moore, 183 U. S. 642, 669, where a large number of authorities upon this subj ect are referred to. The principle decided in that case is much like the contention of the Government herein. The question always is, what did the parties intend by the language used? When such intention is ascertained it is ordinarily the duty of the court to carry it out.
The circumstances were such that it would be almost, necessarily impossible to show what damages (if any) *323 might or naturally would result from a failure to fulfill the contract. The fact that not very long after the contract had been signed and the war with Spain was near its end, the importance of time as an element largely disappeared, and that practically no damage accrued to the Government on account of the failure of the company to deliver, cannot affect the meaning of this clause as used in the contract nor render its language substantially worthless for any purpose of security for the proper performance of the contract as to time of delivery.
When we endeavor, by a construction of the agreement which the parties here made in January 1942, to ascertain what their intention was when they inserted the stipulation for payment of $25 for each calendar day of delay should the carrier fail to call for and/or deliver the goods on the dates specified therein (Wise v. United States, 249 U. S. 361, 365) we find no sufficient basis for concluding that compensation was not the object aimed at, nor any sound reason for refusing sanction to their agreement. We cannot reasonably conclude that the defendant did not have a material stake in the undertaking by plaintiff to transfer the goods within the agreed dates, whether its primary concern was for the convenience and welfare of its military personnel whose goods it had undertaken to move, or whether it was principally concerned with the possible disruption of its military operations and the tangible and intangible losses which might accrue to it therefrom. In light of the circumstances existing at the time of the making of the contract and the known fact that the military establishment must adhere to schedule in nearly everything it does to avoid waste and inefficiency, the sum agreed upon cannot be said to be outside the realm of a reasonable forecast of the probable damages. The liquidated damages provision seems rather steep, eating up as it does within a very few days’ delay practically all the compensation plaintiff was to receive, and we regret the necessity of fully applying it. But the contract was a voluntary one and the language is very clear. No surprise, fraud, or mistake is alleged.
Just what the damages were we do not know and the record does not disclose. The storehouse of facts containing such *324 information as may have been available remained locked, and neither party to the suit produced the key, both parties evidently being content to stand upon the terms of the contract as interpreted by the respective litigants. In the circumstances it is not our province to go prowling around the premises in an effort to find out. We must take the record and- the terms of the contract as we find them. We may reasonably conclude that it was the knowledge of the fact that a fair measure of damages could only be achieved by liquidating the damages by agreement that led the parties to insert in the contract the provision in question, a fact which itself evidences the intent of the parties that the sum agreed upon was liquidated damages and not a penalty. As we recently had occasion to state “the difficulty of determining these questions is the reason and justification for the insertion of the agreement for liquidated damages.” Robt. E. Dineen, Supt., v. The United States, No. 46208, decided June 2, 1947. [109 C. Cls. 18]
The petition is dismissed. It is so ordered.
MaddeN, Judge; Whitaker, Judge; and Littletojst, Judge, concur.

 That Congress recognized and approved this practice at the time when the present contract was executed is amply shown by the Military Appropriation Act, 1942 (55 Stat. 366, 371), wherein, under the subtitle “Travel of the Army” it is provided:
“That appropriations available for travel of personnel of the Military Establishment or employees under the War Department which are current at the date of relief from duty station of such personnel traveling under orders shall be charged with all expenses properly chargeable to such appropriations in connection with the travel enjoined, including travel of dependents and transportation of authorized baggage and household effects of such personnel, regardless of the dates of arrival at destination of the persons so traveling.”