## MILLER v. UNITED STATES.
### No. 49454.

United States Court of Claims.

Oct. 7, 1952.

The plaintiff seeks to recover damages in the amount of $6,338.20, by reason of the alleged breach by the defendant of a contract of sale to plaintiff of certain merchandise from the War Assets Administration, which contract, the plaintiff alleges, resulted from the submission and acceptance of plaintiff's bid on September 13, 1948, and the acceptance thereof and the award of sale to plaintiff by the Board of Awards, on September 17, 1948, and the mailing by defendant of a notice of award to plaintiff on October 7, 1948.

The court, having considered the evidence, the report of Commissioner Wilson Cowen, the briefs, and argument of counsel, makes the following.

### Special Findings of Fact

1. The plaintiff is Richard Miller, an individual engaged in the business of selling general merchandise under the trade name "Johnson's Fair" at 711 Glenwood Avenue, Philadelphia, Pennsylvania.

2. In all of the transactions involved in this case, the War Assets Administration, an agency of the United States, acted for and on behalf of the defendant. For convenience, the War Assets Administration is hereinafter designated the WAA.

3. Prior to September 13, 1948, the plaintiff received a copy of the brochure published by the WAA announcing a sealed bid sale of general merchandise designated "Special Listing PHL–OL–466." The brochure stated that the bids would be opened at 10 a.m. (EDST), September 13, 1948. It listed for sale approximately 60 lots of merchandise. Lot 13, the subject matter of this case, consisted of 3,700 pillows, 360 inner-spring mattresses and 2,450 crew-type mattresses, all of certain sizes and specifications.

4. On the cover of the brochure there was a statement which read as follows:

"Mail Bids to
Washington Customer Service Center
Temporary R Bldg.,
4th St. & Jefferson Dr.
Washington 25, D. C.
Telephone: Republic 7500"

At the beginning of the brochure, there was a section entitled "General Information" which provided in pertinent part as follows:

"How will property be sold?

"By sealed bid, as is. Shipping: facilities platform delivery. Buyer will be responsible for crating, loading and shipping; and must remove property within ten days after notice of award. Otherwise it will be shipped to public warehouse at his expense.

"Where must bids be sent?

"Bids must be received at the WAA Customer Service Center, Temporary R Building, 4th St. & Jefferson Drive, Washington 25, D. C., by 10 A.M. (EDST), September 13.

"How to bid

"No 'all-or-none' bids will be accepted. Bids may be made on the WAA Form 48, Revised, attached. If WAA Form 48, Revised, is not used, the following phrase must appear over the signature of the bidder: 'This bid is subject to the WAA standard terms and conditions of sale and any special terms and conditions under which this offering is made.' Bids should be submitted in triplicate. The envelope in which the bid is placed must be plainly marked in the lower left-hand corner: 'Bid on Sale PHL-OL-466; Opening date September 13.' Bids received which are not so identified will not be considered, but will be returned to the bidder. All bidders are invited to attend the opening and the reading of the bids."

There was attached to the brochure a printed copy of a bid form and acceptance, which was designated WAA Form 48. On the first page of the bid form under the heading of "Instructions," the following statement appeared:

"This form must be filled out in ink, indelible pencil, or by typewriter, and be properly signed by bidder. This bid form must be submitted in triplicate in a sealed envelope. The sale number shown in the title box and the date of the bid opening must be shown on the face of the envelope.

"See 'notice' as to payment and shipping instructions on reverse hereof."

The WAA standard terms and conditions of sale were printed on the reverse side of the bid form. Under the heading "Sealed Bid Terms," the following provision appeared:

"Rejection of bids. The Government reserves the right to reject any and all bids, regardless of whether the same constitute the highest bid, and also to waive any informality in connection with the submission of bids."

Under the heading "Conditions of Sale," it was provided:

"The Standard Terms and Conditions of Sale and any Special Conditions contained herein or attached hereto constitute the entire agreement between the parties with respect to the sale of surplus property specified in the bid or offer. No variations therefrom or modifications thereof, and no representations made or warranties given by any representative, agent or employee of Seller in variation thereof shall be of any effect unless specified in writing and included hereon. The conditions of sale are as follows:

" *　　*　　*　　*　　* "

Following the foregoing paragraph, a number of special conditions were set forth in the bid form. None of such conditions is pertinent to the issues in this suit.

5. The WAA Customer Service Center in Washington, D. C., was one of the branches of the Field Disposal Division of the Philadelphia Regional Office of the WAA. The Manager of the Washington Customer Service Center was Mr. Howard C. Wentworth. Mr. Wentworth was the subordinate of Mr. William J. Stevenson, who was Chief of the Field Disposal Division of the Philadelphia Regional Office. As head of the Field Disposal Division, Mr. Stevenson was in charge of this sale and was a member of the Board of Awards which made the awards for the sale.

6. On September 13, 1948, prior to 10 a.m. (EDST), the plaintiff went to the Philadelphia Regional Office of the WAA and handed to Mr. Stevenson his written bid on WAA Form 48 (the bid form specified in the sales brochure) and a check for $8,023.14, the total amount bid by the plaintiff for seven lots of merchandise. The bid form, addressed to the WAA, read in part as follows:

"In accordance with the offering as numbered above, and subject to all of the terms and conditions stated herein, the undersigned offers to purchase the

items or lots listed below, at the price written opposite each."

This was followed by a list of the seven lots for which the plaintiff bid, including Lots 8, 13, and 32, and the amount of plaintiff's bid on each.

7. Mr. Stevenson telephoned plaintiff's bid to the Washington Customer Service Center of the WAA. The person on the other end of the telephone conversation in Washington was Mr. Wentworth. Mr. Wentworth received plaintiff's bid over the telephone and handed it at the bid opening to Mr. J. H. Campion, who was in charge of the opening and was also Chairman of the Board of Awards. Plaintiff's bid was considered with all other bids at the opening.

8. Plaintiff was the highest bidder on Lot 13, as well as on Lots 8 and 32.

9. Until after the bids were opened and abstracted, no objection was made by any representative of the defendant concerning the fact that plaintiff's bid was filed in writing in Philadelphia and telephoned to Washington. On the afternoon of the day of the sale, however, Mr. Wentworth in Washington telephoned Mr. Stevenson in Philadelphia and stated that the second highest bidder for Lot 13, a Mr. Frank, had objected to plaintiff's bid on the ground that it had been telephoned to Washington instead of being submitted in writing.

10. As has been stated, Mr. Campion and Mr. Stevenson were members of the Board of Awards. The function of the Board was to review the bids, pass on their eligibility, and make the awards. The Board's action was final except where the Board referred matters to a higher authority.

11. On September 17, 1948, the Board of Awards met in Philadelphia to consider the bids in this sale, an abstract of the bids having been sent by the Washington Customer Service Center to the Philadelphia Regional Office. Prior to the meeting of the Board but after he had received the telephone message from Mr. Wentworth regarding the objection to plaintiff's bid, Mr. Stevenson orally stated the facts regarding plaintiff's bid to Mr. Claude Lanciano, legal counsel for the Philadelphia Regional Office of the WAA, who advised Mr. Stevenson that plaintiff's bid was valid.

At the meeting of the Board on September 17, 1948, Mr. Stevenson told the other members of the Board about the objection that had been made to plaintiff's bid for Lot 13 and also stated that legal counsel for the regional office had advised that plaintiff's bid was valid. The Board decided that Lot 13 should be awarded to plaintiff, but in order to preserve a written record of the facts respecting plaintiff's bid and the objection thereto, the Board concluded that it should make the award to plaintiff conditional on obtaining from legal counsel another opinion as to the validity of the bid.

The summary of the minutes of the Board's meeting of September 17, 1948, with respect to Lots 8, 13, and 32, upon which the plaintiff had bid, read as follows:

"*Lot No.*
*Disposition*
8. Awarded to Johnson's Fair at their high bid of $47.47.
13. Awarded to Johnson's Fair at their high bid of $6,771.71. (Pending). Awaiting decision of Legal Counsel—see Memorandum attached.
32. Refer the high bid of Johnson's Fair in the amount of $477.37 to next higher authority for a decision."

12. The memorandum referred to in the minutes in connection with Lot 13 was a memorandum which Mr. Stevenson sent to Mr. Lanciano on September 17, 1948. It read as follows:

"Mr. Miller of Johnson's Fair, Philadelphia, came to my office at 9:30 A.M., September 13, 1948, and asked if I would accept bids on subject Sale. He submitted bids on official Bid Form WAA-48 for five lots, including Lot No. 13, with a check in full.

"Mr. Wentworth, Manager of the Washington Customer Service Center was called on the telephone before 10:00 o'clock the morning of the opening.

"After the bids were all read, it seems that a Mr. Frank, who was second high bidder at $6,286.98, com-

558

plained to Mr. Larsen's Office that this was a telephonic bid, and it appears upon advice from General Cota of this Office, a complaint was registered with him and he is of the opinion that the telephonic bid, coming from me, was not according to the Brochure.

"However, I have contacted Mr. Lanciano of the Legal Division, and he claims that this bid is a valid bid, and before any award on this Lot is made, it is recommended that a further legal opinion be secured from Mr. Lanciano's Office.

"Incidentally, the awards on this Sale are being made as of September 17th, 10:30 A.M. However, Mr. Frank, on the 15th Called Mr. Miller of Johnson's Fair telling him that he had been awarded the Lot and wanting to sell mattresses to him.

"The bid of Mr. Frank was No. 58. The bid of the Johnson's Fair was read as Bid No. 51. Attached to Bidder No. 51 is the Telephone Slip, designating the time of the telephone call.

"Recommended that no award be made until the facts are placed before Mr. Lanciano."

Sometime after September 17, 1948, Mr. Lanciano responded to the memorandum orally and again advised Mr. Stevenson that plaintiff's bid was valid.

13. After Mr. Lanciano had given an oral reply to Mr. Stevenson's memorandum and prior to October 7, 1948, the defendant made a public announcement of the results of the sealed bid sale held on September 13, 1948, by exhibiting in the Washington Customer Service Center a mimeographed statement showing in columnar form the lot number, the award price, and the name and address of the purchaser of each lot sold. The announcement stated that Lots 8, 13, and 32 had been awarded to plaintiff at the prices included in plaintiff's bid for each of these lots.

A number of lots included in the sale were not awarded to purchasers for reasons which were explained in the announcement. For example, the explanation on Lots 15 and 51, which were not awarded to purchasers, was: "Rejected by Board of Awards (Bids Not High Enough)." In other instances, the announcement stated that certain lots were withdrawn by the owning agency; that no bids were received or that the merchandise included in some lots had been allocated to the Quartermaster General.

14. The defendant had in its employ at the Washington Customer Service Center a bonded agent-cashier. As part of her duties, she was authorized to send bidders notices of awards made by the Board of Awards and to collect and receive all money paid by purchasers on their bids. On October 7, 1948, after she had received a copy of the announcement described in the preceding finding, the agent-cashier mailed plaintiff a notice of an award which read as follows:

"Dear Sir: With reference to your bid on Special Offering PHL–OL–466 we wish to inform you that you have been awarded the following lots at the listed prices.

| "Lot. No. | Awarded price |
| --- | --- |
| 8 | $47.47 |
| 13 | 6,771.71 |
| 32 | 477.37 |

"We are in receipt of your deposit in the amount of $8,023.14. As this amount is in excess of the award price, it is requested that you please forward the correct amount $7,296.55 in cash, cashiers check, certified check or postal money order and upon receipt, your original deposit will be returned to you, together with your copy of Form WAA1, sales document and Form 659, cash receipt voucher. Form WAA1 must be presented at time of pick-up of property within 10 days of receipt.

"Very truly yours,
"(S) Darline R. Volk,
"Agent Cashier."

The data relating to plaintiff were typed but the remainder of the form, including the title and signature of the agent-cashier, was mimeographed. The notice was accompanied by a copy of the announcement of the results of the sale, and both documents were received by plaintiff in Phila-

delphia on the morning of October 8, 1948. Prior to the receipt of the documents, plaintiff, who was not in Washington at the time the announcement was posted at the Washington Customer Service Center and therefore did not see it, telephoned Mr. Stevenson's office in Philadelphia and was informed that Lots 8, 13, and 32 had been awarded to plaintiff.

15. During the forenoon of October 8, 1948, Mr. Wentworth had a conversation with an attorney employed in the central office of the WAA in Washington, D. C. The attorney informed Mr. Wentworth that plaintiff's bid on Lot 13 had been held in abeyance by the Board of Awards, pending a decision by legal counsel, and that the notice of award should not have been mailed to plaintiff by the agent-cashier. This advice was in error. Thereafter during the afternoon of October 8, Mr. Wentworth sent the following telegram to plaintiff:

"Johnson's Fair
711 Glenwood Ave Phila.
Reference our letter dated 10-7-48 subject special offering PHL-OL-466 disregard reference to Lot 13 awaiting legal interpretation of award payment requested on lots 8 and 32."

16. On October 21, 1948, plaintiff's attorney sent the Chief of the WAA a telegram which read as follows:

"Special listing PHL-OL-466. As attorneys for Richard Miller Johnson's Fair we request immediate explanation for cancellation lot 13 award. Retain merchandise pending clarification. Copy to H. C. Wentworth."

On the same day, a copy of the above-quoted telegram was also sent by plaintiff's attorney to the Manager of the Washington Customer Service Center.

17. Under date of October 26, 1948, Mr. Stevenson sent the following memorandum to the Manager of the Washington Customer Service Center:

"Subject: correction; awards on lots 8, 13, and 32—special listing PHL-OL-466

"When the Sales Outlet Review Committee convened for the purpose of making disposition on Special Listing PHL-OL-466, three awards were made to the Johnson's Fair, Philadelphia, contingent upon the decision of Legal Counsel.

"This decision has been made, and the bid of Johnson's Fair is not to be considered valid, as it was not submitted in accordance with the instructions in the Brochure. Therefore, it will be necessary to make the following changes:

"Lot No.
8. Award to Manhattan Marine & Electric Co., Inc., 116 Chambers St., New York City (Bidder No. 123) at their bid of $42.20.
13. Award to N. Frank & Son, 476 C Street, NW., Washington, D. C. (Bidder No. 58) at their bid of $6,286.98.
32. Refer the bid of Ace Equipment Co., 307 Canal St., New York City (Bidder No. 141) in the amount of $400.00 to the next higher authority for a decision.

"Please change your records accordingly.

"Will you please sign the enclosed copy of this Memorandum and return to the Bid Room for our files."

18. The merchandise included in Lots 8 and 32 of the sale held at the Washington Customer Service Center on September 13, 1948, was paid for by plaintiff and delivered to him, but the defendant failed and refused to deliver the merchandise included in Lot 13.

19. On October 29, 1948, plaintiff's attorney wrote the Chief of the WAA as follows:

"We have been informed that you have decided to sell Lot No. 13 of the above special listing to a person other than the highest bidder, Richard Miller, trading as Johnson's Fair. Your ground is that Mr. Miller's written bid was not received in Washington prior to the time for opening bids. Prior to the prescribed time it had been filed in Philadelphia, telephoned to Washington by a WAA official in Philadelphia

560

and accepted by the Washington official. You have decided to sell to another person notwithstanding the facts that WAA had notified Mr. Miller that he had been awarded Lot No. 13 and you had taken various other steps which very plainly indicated that you waived any informality in the submission of the bid, if there was any informality.

"You have decided not to sell to the highest bidder despite these acts of waiver even though WAA Standard Terms and Conditions of Sale expressly provide:

"The Government reserves the right * * * to waive any informality in connection with the submission of bids."

"You knew that Mr. Miller was determined to enforce his rights under the award and that he would assert a claim in court if you sold to someone else. You knew that if you sold to someone other than Miller you would not only receive a lower price for the merchandise but you might have to pay damages to Miller. You knew that the risk of damages was present since you regarded the matter serious enough to present it to counsel and counsel considered the question for several days. On the other hand, you knew that if you sold to Miller you would get a higher price for the merchandise and there would not be the faintest risk that you would have to pay damages to anyone since the terms and conditions of sale entitled you to waive informalities in the submission of bids.

"Despite all of this, you decided to take the lower price and run the risk of having to pay damages to Miller. The only basis upon which such a decision could have been justified is that you were extremely anxious to enforce tautly every single technical requirement. But if this is so, why did you follow through on the awards to Miller of Lot No. 8 and Lot No. 32 which were part of the very same special listing and, of course, subject to the same conditions, and for which

Miller bid at the same time, on the same form, and which bids were transmitted to Washington in the very same telephone call?

"It goes without saying that in the light of these very strange circumstances Mr. Miller will press his claim to the extent that the remedies provided by law will permit."

The Associate Administrator of the WAA replied by letter of November 9, 1948, which read as follows:

"The principal point you make in your letter of October 29, 1948, objecting to the award of Lot No. 13 to other than Richard Miller, trading as Johnson's Fair, is that the War Assets Administration in notifying Mr. Miller that he had been awarded Lot No. 13 and by other acts, had indicated that it had waived 'any informality in the submission of bids, if there was any informality.' The provision in the Standard Terms and Conditions of Sale to which you refer provides as follows: 'The Government reserves the right to reject any and all bids, regardless of whether the same constitute the highest bid, and also to waive any informality in connection with the submission of bids.'

"The sales brochure specified that 'Bids must be received at the WAA Customer Service Center, Temporary R Building, 4th St. & Jefferson Drive, Washington 25, D. C., by 10 A.M. (EDST), September 13.' Mr. Miller's bid was not received at the specified location by the required time, but instead was submitted to the Philadelphia Regional Office and telephoned by an employee of that office before 10 A.M. (EDST) September 13 to the Washington Customer Service Center.

"The requirement that bids be submitted at a specified location was not lightly adopted but was the result of long and deliberate consideration and intended to be over-all national policy. In the present sale it is true that the Government could have realized a larger return by making the award to your client. However, this apparent

advantage would be more than offset by the larger aggregate return realized for the Government in insisting that our various offices comply with the terms and conditions set out in the various sales brochures. The return for surplus property sold by the Government is in direct ratio to the amount of customer interest the sales agency is able to generate. For that reason we do not feel warranted in waiving the requirement that bids be submitted at the specified geographical location.

"The award letter sent to your client was the result of inadvertence, and contrary to outstanding instructions to hold the award 'awaiting decision of legal counsel.' The record on this point is available for inspection at your or your client's convenience. The notice of award was sent out October 7, 1948, and immediately upon discovery of the mistake on October 8, 1948 a telegram was sent to your client 'to disregard reference to Lot 13 awaiting legal interpretation of award. Payment requested on Lots 8 and 32.'

"You cite as an inconsistency the fact that the award to Mr. Miller of Lots 8 and 32 was permitted to stand. At the time complaint was made about Lot 13 it was not called to our attention that the bid for Lots 8 and 32 was submitted by Mr. Miller in the same manner as his bid for Lot 13. Had this been called to our attention I can assure you that Lots 8 and 32 would have been disposed of in a manner similar to and consistent with Lot 13.

"We regret the inconvenience caused your client by the unauthorized acts of some of our personnel, but believe you will agree that on an over-all basis the matter has been handled in the best interest of the Government."

20. The parties have stipulated that if plaintiff is entitled to recover, the amount of the recovery should be $6,338.20.

Conclusion of Law

Upon the foregoing special findings of fact which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover,

and it is therefore adjudged and ordered that plaintiff recover of and from the United States the sum of six thousand three hundred thirty eight dollars and twenty cents ($6,338.20).

S. Donald Bean, Maplewood, N. J., for plaintiff. Wolf, Block, Schorr, & Solis-Cohen, Philadelphia, Pa., were on the brief.

Frank J. Keating, Washington, D. C., with whom was Asst. Atty. Gen., Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The facts in this case are not in dispute and are set forth in detail in the findings. If, as a matter of law, upon the facts the plaintiff is entitled to recover it is agreed that the amount due is $6,338.20.

On September 13, 1948, the War Assets Administration, hereinafter referred to as the WAA, conducted a sealed bid sale of surplus merchandise. The sale took place in the WAA Customer Service Center in Washington, D. C., which Center was one of the branches of the Field Disposal Division of the Philadelphia Regional Office. The sale was advertised and announced in brochure published by the WAA, which stated, under the heading "General Information:"

"Where must bids be sent?

"Bids must be received at the WAA Customer Service Center, Temporary R Building, 4th St. & Jefferson Drive, Washington 25, D. C., by 10 A.M. (EDST), September 13."

Prior to 10 a.m., on September 13, the plaintiff went to the WAA Philadelphia Regional Office and handed his written bid for seven lots of merchandise included in the advertised sale, together with the required check, to William J. Stevenson, Chief of the Field Disposal Division of the Philadelphia Regional Office, of which the Washington Customer Service Center was a branch. As Head of the Field Disposal Division, Stevenson was the official in charge of this sale and was a member of

562

the Board of Awards which made the awards for the sale. Plaintiff was the highest bidder for Lots 8, 13, and 32, offered for sale.

One of the WAA standard terms and conditions of sale, printed on the bid form, was as follows:

"Rejection of bids. The Government reserves the right to reject any and all bids, regardless of whether the same constitute the highest bid, and also to waive any informality in connection with the submission of bids."

William J. Stevenson, as the Head of the Field Disposal Division in charge of the sale, received plaintiff's bid without objection and telephoned the bid to H. C. Wentworth, the Manager of the WAA Washington Customer Service Center. Wentworth thereupon handed the plaintiff's bid so received from Stevenson, to the WAA official who was in charge of the opening of bids and who was Chairman of the Board of Awards. Although the Government in the advertisement of sale reserved the right to reject any and all bids it also, as one of the terms and conditions of submitting bids on sale reserved the right as above stated "to waive any informality in connection with the submission of bids." No objection was made by any Government official to plaintiff's bid upon the ground that it was originally filed with the Chief of the Regional Office at Philadelphia and telephoned by him to the Washington Branch, and such bid was considered with all other bids at the opening of bids on the 13th.

Although no official of the Government interposed any objection to plaintiff's bid upon the ground of informality in connection with the submission thereof, Mr. Wentworth in the Washington branch of the Philadelphia Regional Office telephoned Mr. Stevenson in Philadelphia, on the afternoon of September 13, the day of sale, stating that a representative of the second highest bidder for Lot 13, a Mr. Frank, had objected to the consideration of plaintiff's bid, which was the highest bid for this lot, on the ground that plaintiff's bid had been first filed with the Regional Office at Philadelphia and telephoned to Washing-

ton, instead of being submitted or filed, in writing, to the Washington office on or before September 13.

An abstract of the bids made was sent by the Washington Customer Service Center to the Philadelphia Regional Office, for consideration by the Board of Awards, which met in Philadelphia on September 17, 1948. The function of the Board was to review the bids, pass on their eligibility, and make the awards. Before the Board met, Mr. Stevenson, Chief of the Regional Office and a member of the Board, orally stated, to legal counsel for the Philadelphia Regional Office, all the facts concerning the submission of plaintiff's bid and the objection which had been made to the Washington office with reference thereto. Counsel advised Stevenson that plaintiff's bid was valid. In our opinion this advice was entirely correct because the Government reserved the right, as one of the conditions of sale, to waive any informality in connection with the submission of bids. It is clear that no other bidder had been prejudiced by the informality in connection with the submission by plaintiff of its bid, which consisted of the filing of a written bid at the main office of the WAA, Field Disposal Division, and with the chief official of the Regional Office instead of with the branch office at Washington. When the Board of Awards met on September 17, Stevenson informed the other members of the Board, in detail, about the submission of plaintiff's bid and the objection by another bidder to the plaintiff's bid for Lot 13, and also informed the Board that counsel for the Regional Office had advised him (Stevenson) that plaintiff's bid was valid. Upon consideration of the facts and circumstances the Board concluded that plaintiff's bid was valid and that the sale of Lots 8, 13, and 32, should be awarded to plaintiff, but in order to preserve a written record of the facts respecting plaintiff's bid and the objection thereto by the next lowest bidder, the Board concluded that it should make the award to plaintiff conditional upon obtaining from the counsel of the Regional Office another opinion as to the validity of plaintiff's bid. Some time after the meeting of the Board, Mr. Steven-

son sent to counsel for the Regional Office a complete memorandum on the matter and the counsel again gave an opinion that plaintiff's bid was valid (findings 11 and 12).

Thereafter and prior to October 7, 1948, the defendant made a public announcement of the results of the sale by exhibiting in the Washington Customer Service Center a mimeographed statement, stating that Lots 8, 13, and 32, had been awarded to plaintiff (finding 13). A copy of the announcement was given to a bonded agent-cashier employed by defendant in the Washington Customer Service Center. This official was also authorized, as a part of her regular duties in such cases, to send bidders notices of awards made by the Board of Awards and to collect and to receive all money bid by purchasers on their bids. After receiving the above mentioned announcement of awards made by the Board of Awards, the defendant's agent-cashier mailed the following notices of award and letter to plaintiff:

"Dear Sir: With reference to your bid on Special Offering PHL–OL–466 we wish to inform you that you have been awarded the following lots at the listed prices.

"Lot No.: Awarded price
8 .......................... $47.47
13 ......................... 6,777.71
32 ......................... 477.37

"We are in receipt of your deposit in the amount of $8,023.14. As this amount is in excess of the award price, it is requested that you please forward the correct amount $7,296.55 in cash, cashiers check, certified check or postal money order and upon receipt, your original deposit will be returned to you, together with your copy of Form WAA 1, sales document and Form 659, cash receipt voucher. Form WAA 1, must be presented at time of pick-up of property within 10 days of receipt.

"Very truly yours,
" (S) Darline R. Volk,
"Agent Cashier."

This notice, accompanied by a copy of the announcement of the action by the Board of Awards, was received by plaintiff in Philadelphia on the morning of October 8, 1948.

Thereafter, on October 8, Mr. Wentworth of the Washington branch of the Philadelphia Regional Office of the WAA was told by an attorney employed in the Center Office at Washington, that plaintiff's bid on Lot 13 had been held in abeyance by the Board of Awards at Philadelphia, pending a decision by counsel as to its validity and that the notice of award which had been mailed to plaintiff on the 7th, should not have been mailed. This advice was erroneous, for the reason, as above stated, that legal counsel for the Philadelphia Regional Office had given the Board of Awards two opinions that plaintiff's bid was valid long before the Board of Awards prepared and published the public announcement of the results of the sale showing that plaintiff's bid had been accepted and the sale of Lots 8, 13, and 32, had been awarded to plaintiff. However, on the afternoon of October 8, after plaintiff had, on the morning of that day received the written notice of the award to him, Wentworth of the Washington office sent plaintiff a telegram stating that he should disregard the reference to Lot 13 in the notice of award, since the award as to that lot was awaiting legal interpretation. Plaintiff immediately replied protesting this action.

The outcome of the matter was that as a result of a memorandum, on October 26, 1948, from Stevenson in Philadelphia, to Wentworth in Washington, as shown in finding 17, the sale of Lot 13 to plaintiff was cancelled and awarded to the next lowest bidder, N. Frank & Son, but the award of sale to plaintiff on the same bid for Lots 8 and 32 was permitted to stand, and these lots were delivered to and paid for by plaintiff.

The reason for and the basis of this attempted change in position by Stevenson, as to plaintiff's bid for Lot 13, is not clear from the record. The Board of Awards did not undertake to change the decision which it had made, and the statement of Stevenson to Wentworth, on October 26, that plaintiff's bid was not valid "as it was not submitted in accordance with the instructions in the Brochure," was of no

564

effect since the Board of Awards had authority to waive this informality and had done so on September 17, on the advice. of counsel for the Philadelphia Regional Office. Moreover, a binding contract of sale had resulted before the defendant undertook to change its position as to Lot 13. In addition to this, the defendant proceeded to carry out the decision of the Board of Awards and to complete the sale by delivery to plaintiff of the merchandise included in Lots 8 and 32, which were included in the same bid covering Lot 13.

There was an offer by plaintiff, and an acceptance by defendant, which was communicated in writing to and received by plaintiff before defendant undertook to change its position as to the sale of Lot 13. This offer and acceptance gave rise to a binding contract, Nisley Co. v. Rudolph & Bauer, 6 Cir., 64 F.2d 571; Restatement of Contracts, §§ 19 and 22. The defendant's attempt to cancel its acceptance after plaintiff had received formal notice of the acceptance of its bid and notice of award of sale to him was without legal effect. There was no proper basis, in our opinion, for the defendant's action in attempting to cancel the sale of Lot 13 on October 26, since the Board of Awards, as it had a right to do, had already exercised its right to waive any informality in connection with the submission of plaintiff's bid, as set out in the Terms and Conditions of Sale.

The plaintiff is entitled to recover, and judgment will be entered in his favor for $6,338.20. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.