**OVERSEAS NAVIGATION CORPO-
RATION**

v.

**The UNITED STATES.**
Congressional No. 17869.

United States Court of Claims.
March 1, 1955.

Karl J. Schumer, New York City, George H. Cohen, New York City, on the briefs, for plaintiff.

Frances L. Nunn, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

This case comes before the court pursuant to Senate Resolution 193, 82d Con-

gress, adopted August 27, 1951, which provides as follows:

"*Resolved,* That the bill (H.R. 1580)[1] for the relief of Overseas Navigation Corporation, now pending in the Senate, together with all the accompanying papers, is hereby referred to the Court of Claims; and the court shall proceed with the same in accordance with the provisions of sections 1492 and 2509 of title 28 of the United States Code and report to the Senate, at the earliest practicable date, giving such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand as a claim, legal or equitable, against the United States and the amount, if any, legally or equitably due from the United States to the claimant: *Provided, however,* That the passage of this resolution shall not be construed as an inference of liability on the part of the Government of the United States."

Plaintiff seeks to recover the sum of $12,500 representing a deposit made by it in connection with its bid of $50,000 November 21, 1946, for the purchase of the tanker *Blue Sunoco* from the Maritime Commission. The bid was accepted and upon plaintiff's failure to make further payment after inspection of the ship and accept delivery of the vessel, the Commission retained the deposit as liquidated damages under a provision in the invitation for bids issued October 1, 1946.

In 1942, the *Blue Sunoco* was taken from the Sun Oil Company by the War Shipping Administration and turned over to the Navy for use in the Hawaiian Islands during the war. In 1945, the vessel, then in need of extensive repairs, including the replacement of its engines, was returned to the War Shipping Administration at San Francisco, the Navy having decided to relinquish its use of the vessel rather than make the needed repairs. The Maritime Commission then proceeded to offer the vessel for sale pursuant to section 5 of the Merchant Marine Act of 1920, 41 Stat. 990, as amended 49 Stat. 1985, 1987, 2016, 46 U.S.C.A. § 864, adopting an upset or minimum price of $50,000. This price was established in the following manner: An estimate was made of $210,000 as the present day sound condition value, from which was subtracted $171,819 representing the Commission's estimate of the probable cost of repairs, giving a present day "as is" value of $38,181, which the Commission raised to $50,000. No responsive bid was received when the vessel was first offered in June 1946, nor were any bids received within the stated period when another invitation was issued in October of that year.

The "Information and Instructions to Bidders" read in part as follows:

" * * * Bids of less than $50,-000 for the vessel will not be considered.

" * * * The vessel is located in the Suisun Bay Laid-up Fleet, San Francisco, * * * and is a twin screw motor tanker, built in 1929 * * *, having a gross tonnage of 1588, and a deadweight tonnage of 2510. She is powered with two 6 cylinder Bessemer diesel engines developing a total of 1000 BHP. Her dimensions are 246'6" length, 43' breadth, 18'6" depth and 16' draft.

---

1. This Bill, which passed the House in the 82d Congress, 1st Session, provided in part as follows:

" * * * the Secretary of the Treasury is authorized and directed to pay, out of any money in the Treasury not otherwise appropriated, to the Overseas Navigation Corporation of New York, New York, the sum of $12,500. The payment of such sum shall be in full settlement of all claims against the United States based on the fact that a deposit of $12,500 made by such corporation, in connection with a bid which it submitted to the United States Maritime Commission in 1946 for the purchase of the coastal tanker Blue Sunoco, was declared forfeit on March 17, 1947, after such corporation failed to take delivery * * *."

"However, any description or other information furnished herein or otherwise concerning the vessel is solely for general information of bidders and its accuracy is not warranted. The vessel may be inspected upon application to * * *, Acting Fleet Superintendent, Susisun Bay Reserve Fleet, * * *. All inspections shall be at the risk of prospective bidders and without liability to the United States * * *. Prospective bidders are cautioned to inspect the vessel and are hereby notified that failure of any bidder to inspect the vessel or otherwise acquire full information as to its identity, physical condition or otherwise will in no event form the basis for the withdrawal of any bid or the return of any bid guaranty after the time fixed for opening bids, or for the recission of any contract as a result of acceptance of a bid. Any bid submitted without such inspection or other information is solely at the risk of the bidder. * * *

"* * * The Commission reserves the right to reject any and all bids, call for new bids, waive any irregularity in any bid, and make such award as it may deem is most advantageous * * *.

"* * * The vessel is offered for sale 'as is, where is' at date of delivery, * * * without warranty, guaranty, or representation as to seaworthiness, condition, description, capacity, tonnage, or otherwise. However, the bill of sale conveying title in the vessel from the Commission to the Buyer will fully warrant title and freedom from all liens. * * *

"* * * the Buyer must accept * * * delivery within 30 days from the date of receipt of notice of acceptance of bid. * * *

"* * * The Buyer shall pay the full purchase price of the vessel in cash or by certified or cashier's check at or before time of delivery. * * *

"* * * No bid will be considered unless it is accompanied by a guaranty, satisfactory to the Commission, in a sum equal to at least twenty-five percent of the amount of such bid, to insure compliance with the terms of the bid. If the Buyer fails to make full payment of the purchase price and take delivery of the vessel, all within the time specified herein, the full amount of this Bid Guaranty shall be paid to the Commission as liquidated damages and not as a penalty. * * *" [Italics supplied.]

The engines were in bad condition, and the statement in the invitation relative thereto was misleading. When plaintiff submitted its bid on November 21, the time for submission of bids under the invitation had expired on November 13, 1946, and plaintiff was not given time to inspect the vessel.

In November of 1946, representatives of the plaintiff corporation conferred with representatives of the Maritime Commission concerning the possible procurement of ships. Plaintiff's vice president understood from these conversations that plaintiff's position in the procurement of vessels would be improved if plaintiff could show ownership of a vessel or vessels. During these negotiations plaintiff's officials learned of the Blue Sunoco and were informed that although the time within which bids were to be submitted had expired the time could be extended by the Commission. On November 21, 1946, eight days after the closing date, the Commission received plaintiff's bid which read as follows:

"In response to your Invitation for Bids No. PD–X–234 dated Oct. 1, 1946, Information and Instructions to Bidders, * * * which by this reference are incorporated herein and made a part hereof, and subject to all the terms and conditions thereof, the undersigned hereby offers to purchase the tanker Blue Sunoco, Official No. 228,330, for the lump sum amount of $50,000.

"Enclosed is security, as required, consisting of: Certified Check $12,500.

"Enclosed, also, is the required Affidavit of Nationality of the undersigned."

Said bid was accepted by the Commission on December 10, 1946, and plaintiff notified two days later.

After the acceptance of its bid plaintiff employed a marine surveyor to inspect the *Blue Sunoco* and obtain estimates of the cost of making necessary repairs. When the surveyor's report showed the cost of repairs to be much higher than expected, plaintiff requested an extension of time within which to accept delivery of the vessel. In February 1947, plaintiff, having decided that the repair costs were prohibitive and that further sale of the vessel in its then condition was unlikely, requested the Maritime Commission either to return the $12,500 deposit or apply it toward the purchase of another ship. This the Commission refused to do and, on August 26, 1947, notified plaintiff that its deposit would be retained as liquidated damages. On March 1, 1950, following an appeal by plaintiff, this action was affirmed.

In January or February 1948, the Maritime Commission for the third time authorized the issuance of invitations for bids on the *Blue Sunoco* upon the following alternative bases: (1) for purposes of operation under United States flag or (2) for complete scrapping with bidding restricted to United States citizens. A bid of $32,596 by a tug company, made under the first condition, was accepted and the *Blue Sunoco* was subsequently converted and used as a non-self-propelled barge.

■ Plaintiff's initial contention is that its offer of $50,000 to purchase the *Blue Sunoco* was not in reality in response to the invitation for bids, but was the result of a negotiated sale with officials of the Maritime Commission, and that its representatives had been misled by the Commission as to the actual condition of the vessel, i. e., that it could be repaired for $35,000, and that it had been hurried by representations of Commission officials in submission of its offer to purchase the vessel, at the minimum price fixed therefor by the Commission knowing its condition. Such findings are not adequately supported by the evidence (findings 9 and 21). The language of plaintiff's bid shows quite clearly that the bid was submitted in response and subject to the terms contained in the invitation for bids. Those terms, set out above, speak for themselves and plaintiff is legally bound by them.

Plaintiff's second position is that the Maritime Commission acted illegally in retaining the $12,500, because it could not lawfully extend the closing date for bids and accept bids submitted during the extended period without readvertising, and in any event the retention of the deposit as liquidated damages resulted in the imposition of a penalty.

■■ Under the terms of the invitation for bids the Commission reserved "the right to reject any and all bids, call for new bids, waive any irregularity in any bid, and make such award as it may deem is most advantageous." In the absence of a showing that another bidder had been prejudiced, the Commission was entitled to waive any informality in connection with the submission of a particular bid. Miller v. United States, 107 F.Supp. 555, 123 Ct.Cl. 438, 452–453. Nor do we find that circumstances are such as to legally excuse plaintiff from its agreement to permit retention of the $12,500 as liquid damages upon its failure to accept delivery of the vessel and make payment in full. See Weathers Bros. Transfer Co., Inc. v. United States, 109 Ct.Cl. 310, 320–322 and cases there cited; cf. Priebe & Sons. v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32. It is difficult to view the retention of the $12,500 as the imposition of a penalty when the Maritime Commission apparently, in view of the contract documents, sustained a loss of $17,404 representing the difference between plaintiff's price of $50,000 and the $32,596 subsequently received for the vessel.

■ Plaintiff also asserts that the Commission was not entitled to place the sales price at $50,000, having decided that the then present value of the vessel was only $38,181. Said difference, plaintiff urges, represents a profit to which the Commission was not entitled. Under the terms of the Merchant Marine Act, supra, the Commission was directed to include among other things in determining the sales price "facts or conditions that would influence a prudent, solvent business man in the sale of similar vessels or property which he is not forced to sell." Under such a provision the Commission when determining its selling prices is entitled to obtain what it believes to be the best possible price for the vessel which it offers for sale.

### Conclusion

We find no legal or equitable relief in a juridical sense to which plaintiff is entitled. Its allegations of a negotiated sale are not adequately supported and we have found nothing to free it from the binding conditions which it voluntarily, though mistakenly, assumed with the submission of its bid on November 21, 1946 (finding 10). There are, however, circumstances present which favor a recommendation by the court to the Congress that it grant plaintiff a return of the $12,500. Such a recommendation stems principally from our belief that the Maritime Commission sustained no appreciable loss on the disposal of the *Blue Sunoco*. While to grant return of the $12,500 would take from the Commission the full measure of its bargain in the nature of a profit, and would in that sense technically impose a contract loss, the fact that no bids at the $50,000 figure other than plaintiff's, were received after two offerings, supports the belief that the Commission had set its asking price considerably above the market, and that those who had had time and opportunity to inspect the ship did not consider it to be worth the asking price

in the bid. The vessel's appraised value, determined by the Commission was only $38,181 and they eventually did receive $32,596 for it. When allowance is made for the difference which past experience of this court in other cases has shown to exist in the appraisement of ship values this difference of $5,585 is of little consequence. It is therefore recommended to the Congress that plaintiff receive the sum of $12,500, said recommendation being directed solely to the discretion of the Congress, on the grounds of equity and justice and fair dealing. See conclusion of law and footnote 1 in Gay Street Corporation of Baltimore v. United States, Congressional No. 3–52, decided January 11, 1955.

This opinion and the findings of fact, together with the conclusions thereon, will be certified to Congress pursuant to Senate Resolution 193, 82d Congress, 1st Session.

LARAMORE and MADDEN, Judges, concur.

JONES, Chief Judge (dissenting in part).

I think neither party is wholly responsible for the dilemma presented here. On the one hand, representatives of the defendant did not disclose the full facts in connection with the sale of the ship. On the other hand, the plaintiff was careless in signing a contract which clearly showed the sale was being made on an "as is, where is" basis, and that the amount of the deposit, in the event of default, should be treated as liquidated damages.

Clearly there is no legal liability, but in all the circumstances I think the ends of justice would be served if one-half of the deposit were returned.

I would recommend that plaintiff be paid $6,250 in full settlement of its claim.

WHITAKER, Judge, joins in the foregoing dissent.